**KISHAWN SMITH, Appellant/Defendant**

**v.**

**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Crim. No. 2007-078

Supreme Court of the Virgin Islands

May 19, 2009

ROBERT L. KING, ESQ., Law Offices of Robert L. King, Esq., St. Thomas, USVI, *Attorney for Appellant.*

RICHARD S. DAVIS, ESQ., Department of Justice, St. Thomas, USVI, *Attorney for Appellee.*

CABRET, *Associate Justice*; SWAN, *Associate Justice*; and D'ERAMO, *Designated Justice.*[1]

## OPINION OF THE COURT

(May 19, 2009)

CABRET, J. Following a fatal shooting at a public housing community on St. Thomas, the People of the Virgin Islands charged Kishawn Smith with, among other crimes, second degree murder, possession of an unlicensed firearm, and unauthorized possession of ammunition. Smith was tried before a jury which found him guilty of these three offenses. Smith filed the instant appeal asserting that the evidence presented at trial was insufficient to sustain his convictions. For the reasons which follow, we find the evidence is sufficient to sustain Smith's convictions for second degree murder and possession of an unlicensed firearm. However, because the People failed to present sufficient evidence that Smith was not authorized to possess ammunition, his conviction on that charge will be reversed.

## I. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to review the trial court's judgment and commitment pursuant to title 4, section 32(a) of the Virgin Islands Code which provides that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law."

In reviewing Smith's challenge to the sufficiency of the evidence, we apply "a particularly deferential standard of review." *United States v. Kellogg*, 510 F.3d 188, 202 (3d Cir. 2007) (citation and quotation marks omitted). Following a criminal conviction, we view the evidence

---

[1]    Chief Justice Rhys S. Hodge has been recused from this matter. Francis J. D'Eramo, former Judge of the Superior Court of the Virgin Islands, sat in his place by designation by Order of the Court entered October 7, 2008, pursuant to title 4, section 24(a) of the Virgin Islands Code. Designated Justice D'Eramo participated in the panel's oral argument and conference of the appeal, and he approved this Opinion, but died before the Opinion was filed.

presented at trial in a light most favorable to the People. *Latalladi v. People*, S. Ct. Crim. No. 2007-090, 2009 V.I. Supreme LEXIS 10, *13 (V.I. Feb. 11, 2009); *Kellogg*, 510 F.3d at 202. We will affirm a conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 202 (citations and quotation marks omitted); *accord Lattalladi*, 2009 V.I. Supreme LEXIS 10, 2009 WL 357943 at *5.

## II. FACTUAL BACKGROUND

The evidence presented at trial, viewed in a light most favorable to the People, shows that Smith was acquainted with the murder victim, Kelmon David. David and his live-in girlfriend, Rena Wade, became estranged when Wade formed a romantic relationship with Smith. Although Wade continued to live with David, she would often stay out with Smith until the late evening and early morning hours. Eventually, Wade was forced out of the house where she had lived with David. The fatal confrontation between David and Smith occurred approximately three weeks later.

On the day of the shooting, February 4, 2006, David and Smith were among a small group of people congregating near a basketball court in the Oswald Harris Court public housing community on St. Thomas. At some point, Smith stood over David, who was seated, and began shouting at him. As the shouting escalated, Smith drew a gun from the waist of his pants, pointed it a couple of inches from David's head, and shot David twice: once in the head and once in the back of the neck. Smith then ran from the area. David died on the scene from the gunshot wounds. Several months later Smith was arrested and charged with the murder,[2] along with unauthorized possession of a firearm and unauthorized possession of ammunition.

Two individuals who witnessed the shooting testified for the People at Smith's trial. Niabingie Parker was one of the eyewitnesses. At the time of the shooting, Parker was in the bathroom of his girlfriend's apartment "[r]ight across from where the crime happen[ed]." (Appendix at 409.) Parker testified that when he heard a loud argument outside, he stood on the toilet and looked out the bathroom window where he saw Smith, whom he knew well, standing over and yelling at David. According to

---

[2] The original Information charged Smith with first and second degree murder.

Parker, Smith asked David: "what you doing in my hood? Mean tell you don't come in my hood? [sic]" (Appendix at 435.) Parker testified that as the confrontation progressed, he watched Smith pull a chrome hand gun from the waist of his pants and shoot David in the head. When David fell over to the side, he fell on an individual who pushed him away, and Smith shot David a second time. Parker then saw Smith run behind a building, then to a car which he drove out of the housing community. Parker did not immediately report to the police what he had witnessed that day. It was not until Parker was arrested for unassociated crimes in July of 2006 that he told the police what he had seen.

Parker's testimony was largely corroborated by the testimony of the other eyewitness, Maryesia Stridiron. Stridiron testified that on the afternoon of the shooting she was sitting outside with friends when her attention was drawn to a man cussing loudly near the basketball court. As Stridiron watched, the man who was cussing pulled a gun from his pocket, stood over a man who was seated, pointed the gun mere inches from the seated man's head and shot the man in the head. Stridiron stated that seated man fell forward onto the shooter and that the shooter pushed him off and shot again. The shooter then ran from the scene. Stridiron, who acknowledged she observed the shooting from a "far distance," reported to the police what she had witnessed, but was unable to identify the shooter in various photographs shown to her. (Appendix at 292.)

The medical examiner who performed David's autopsy also testified for the People. According to the medical examiner, the autopsy showed that David died from "two gunshot wounds, one to the top of the head, one to the back of the neck," (Appendix at 367) and that both gunshots were fired very close to David's head. The medical examiner further testified that his autopsy findings were consistent with the descriptions of the shooting provided by the two eyewitnesses who testified at trial.

During the People's presentation of evidence, the jury was taken to view the scene of the shooting. At the scene, Parker pointed out the bathroom window from which he observed the shooting and showed the jurors where both Smith and David were situated during the confrontation. The jury was also shown were Stridiron was seated when she observed the shooting.

In response to the People's evidence, Smith presented an alibi defense. Smith testified that at the time of the shooting he was attending a party at a friend's house that was located near Oswald Harris Court. Smith

presented testimony from two witnesses to support his alibi. One of the alibi witnesses was Smith's cousin. This witness testified that he was with Smith at the party the entire afternoon that the shooting occurred. The other alibi witness was an individual who was identified at trial as one of the people seen fleeing the scene of the shooting. This witness also claimed to have been with Smith at the party.

In addition to his alibi witnesses, Smith presented evidence attacking the credibility of Niabingie Parker, the sole eyewitness who identified Smith as the shooter. This evidence consisted of a statement, read to the jury, previously given to the police by Parker's former girlfriend, Akia Richards. In the statement, Richards asserted that she was with Parker when they heard the gunshots on the day of the shooting. According to Richards. statement, she and Parker were in the shower "having sex" when they heard the gunshots (Appendix at 867), and there is no window from which you can look out from the shower. The statement also revealed, however, that Richards ended her relationship with Parker before she gave her statement and that her current boyfriend was a friend of Smith.

Based on the evidence, the jury found Smith guilty of second degree murder,[3] carrying an unlicensed firearm during the commission of second degree murder,[4] and unauthorized possession of ammunition.[5] The trial court sentenced Smith to thirty-five years incarceration for his murder conviction, a consecutive fifteen years incarceration and a $25,000 fine for the firearm conviction, and a consecutive seven years incarceration and a $10,000 fine for unauthorized possession of ammunition.[6] Smith filed this appeal asserting that the evidence produced at trial was insufficient to sustain his convictions.

---

[3]  *See* V.I. CODE ANN. tit. 14, §§ 921, 922(b) (1996 & Supp. 2008).

[4]  *See* 14 V.I.C. §2253(a) (Supp. 2008).

[5]  *See* 14 V.I.C. §2256(a) (Supp. 2008).

[6]  Although, as discussed below, we are reversing Smith's conviction for unauthorized possession of ammunition based on a lack sufficient evidence, we note that the trial court's sentence on this conviction exceeds the statutory maximum of five years imprisonment. *See id.* It appears that the trial court imposed the erroneous sentence pursuant to the prior version of section 2256(a), which provided for a sentence of "not less than seven years." 2005 V.I. Sess. Laws 106 (Act No. 6730, §27).

## III. DISCUSSION

Smith raises several arguments to buttress his assertion that the evidence was insufficient to support his convictions for second degree murder and carrying an unlicensed firearm during the commission of the murder. Smith contends the evidence was insufficient because there was no physical evidence tying him to the crimes and because the eyewitness testimony lacked credibility. With regard to the latter, Smith argues that the evidence showed that one of the eyewitnesses, Stridiron, was too far away to adequately witness the fatal confrontation, and the other eyewitness, Parker, gave inconsistent testimony. Smith further attacks Parker's credibility on the ground that he waited five months to report what he saw to the police and on the ground that Parker's former girlfriend, Richards, stated that they were "having sex" at the time of the shooting and there was no window from which Parker could have witnessed the shooting. (Appendix at 867.) According to Smith, Richards. statement "so undercuts the testimony [of Parker] that no reasonable jury could rely on his testimony to support a conviction." (Appellant's Br. 6.)

By pointing to this evidence, however, Smith is clearly asking this Court to weigh the evidence and judge the credibility of certain witnesses. On appeal, we do neither. *See United States v. Carr*, 25 F.3d 1194, 1201 (3d Cir. 1994) (" 'In determining whether evidence is sufficient, we will not weigh evidence or determine the credibility of witnesses.' " (quoting *United States v. Casper*, 956 F.2d 416, 421 (3d Cir. 1992))). To the extent that there were conflicts in the testimony, these conflicts presented credibility issues for the jurors to resolve. *See United States v. Boone*, 279 F.3d 163, 189 (3d Cir. 2002); *United States v. Stirone*, 311 F.2d 277, 284 (3d Cir. 1962). "[W]e are not at liberty to substitute our own credibility determinations for those of . . . the jury." *United States v. Dillon*, 532 F.3d 379, 391 n. 9 (5th Cir. 2008). Thus, on appeal, this Court resolves such conflicts in favor of the conviction. *See United States v. Rana*, 944 F.2d 123, 125 (3d Cir. 1991). "The reasonable doubt which will prevent conviction must be the jury's doubt and not that of this [C]ourt." *Stirone*, 311 F.2d at 284 (citations omitted). Without belaboring the point, the jurors were entitled to believe Parker's testimony, which included his identification of Smith as the person who shot and killed David. Accordingly, we find no merit in Smith's assertion that the evidence was insufficient for a rational trier of fact to find him guilty beyond a

reasonable fact of second degree murder and carrying an unlicensed firearm during the commission of the murder.

We agree with Smith, however, that the People failed to present sufficient evidence supporting his conviction for unauthorized possession of ammunition. The evidence supporting his conviction was drawn from the fact that prior to the shooting, Smith must have possessed the bullets that he shot into David. One of those bullets was recovered during David's autopsy; the other exited his body and was never found. The People charged Smith with unauthorized possession of ammunition in violation of title 14, section 2256(a) of the Virgin Islands Code, which provides:

> Any person, who *unless authorized by law*, possesses, sells, purchases, manufactures, advertises for sale, or uses any firearm ammunition shall be guilty of a felony and shall be sentenced to imprisonment for not less than one year nor more than five years and shall be fined not less than $5,000, or shall be both fined and imprisoned.

(Emphasis added). To find Smith guilty, the jury would have to have found that he possessed ammunition without authorization. But as the Court of Appeals for the Third Circuit recently pointed out, Virgin Islands law proscribes possession of ammunition without authorization, but it does not establish a mechanism for authorizing possession of ammunition. *See United States v. Daniel*, 49 V.I. 1169, 518 F.3d 205, 208 (2008). Without any such mechanism, like the licensing process for possessing a firearm, *see* 23 V.I.C. § 455 (1993 & Supp. 2008), the People could not show that Smith was not authorized to possess ammunition. *See Daniel*, 518 F.3d at 208-09. And, while the People argue that evidence showing that Smith was not licensed to carry a firearm also established that he was not authorized to possess ammunition, the Virgin Islands Code does not make "lawful possession of ammunition contingent on having a firearms license. The firearm licensing requirements restrict the possession of firearms, not ammunition." *Id.* at 209.

Though the People valiantly attempt to convince this Court to disregard *Daniel* — arguing that the facts are somehow distinguishable, that we are not bound by the decision, and that the reasoning is flawed — we believe *Daniel* was properly decided and adopt the decision in this case. There are no material differences between the facts in *Daniel* and this case. In both

cases the government charged the defendant with unauthorized possession of ammunition and at trial failed to present evidence concerning the lack of authorization. Thus, we are compelled to conclude, as did the court in *Daniel*, that the People failed to prove a requisite element of the offense of unlawful possession of ammunition. *See id.* at 209-10. For this reason, we will reverse Smith's conviction on that charge.

## IV. CONCLUSION

Because the evidence presented at trial was sufficient for a rational trier of fact to find beyond a reasonable doubt that Smith was guilty of second degree murder and carrying an unlicensed firearm during the commission of the murder, we will affirm his convictions on those counts. However, because the People failed to present evidence from which a jury could find that Smith unlawfully possessed ammunition, we will reverse his conviction on that charge.