**ANTONIEL CASTOR, Appellant/Defendant**
**v.**
**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Criminal No. 2010-0097
Supreme Court of the Virgin Islands
September 28, 2012

483

SHEENA CONWAY, ESQ., St. Thomas, USVI, *Attorney for Appellant.*

TIFFANY V. MONROSE, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee.*

Before: HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(September 28, 2012)

CABRET, *Associate Justice.* In this case, Antoniel Castor appeals his convictions for unlawful sexual contact in the first degree, aggravated rape in the first degree, attempted aggravated rape in the first degree, and child abuse stemming from a series of encounters between Castor and the eleven-year-old daughter of the adult girlfriend with whom he resided, as embodied in a Judgment and Commitment entered by the Superior Court on January 9, 2009. As detailed below, Castor attacks the sufficiency of the People's evidence to sustain his convictions on the various charges, argues that comments made by the prosecuting attorney during opening statement and closing arguments violated his due process rights, and challenges his concurrent sentences as violating the Double Jeopardy Clause. For the reasons that follow, we will affirm Castor's convictions, but vacate his sentence and remand the matter to the Superior Court for re-sentencing.

## I. FACTS AND PROCEDURAL HISTORY

In April 2007 a sixth grade teacher at an elementary school noticed that one of her eleven-year-old students, M.L., appeared to be showing signs of pregnancy. M.L. was sent to the school nurse and admitted being concerned that she might be pregnant. M.L. told the nurse that she believed her stepfather, Castor, was the father of the child because he would come into her room at night and "put[] his penis around her private, her vagina." (J.A. 64.) M.L.'s statements were immediately reported to the school principal, the Department of Human Services, and the police. Two social workers from the Department of Human Services took M.L. to a hospital emergency room, where a doctor confirmed that she was four to five months pregnant. At the hospital, police took a statement from M.L. in which she claimed that, between the months of September 2006 and March 2007, Castor would enter her room at night after coming home from work. He either removed, or moved aside, her panties and

rubbed his penis on her vagina. M.L. also reported that twice, in the month of February, she recalled something wet on her leg after Castor left her room. Finally, M.L. told police that Castor had entered her room in March to assault her again, but she had fended him off by moving around and shoving him away. In total, she recalled three to six sexual encounters with Castor. Castor was arrested and charged, by amended information, with thirteen crimes.[1]

At trial on October 28, 2008, the People called the elementary school teacher and school nurse to testify to the events leading up to M.L.'s trip to the hospital. The People also called one of the two social workers with the Department of Human Services who accompanied M.L. to the hospital, who testified that she was in the room when the doctor determined that M.L. was four to five months pregnant. A second social worker testified that she interviewed M.L. before the police arrived and that M.L. told her that her stepfather, Castor, was the father of the child.

Next, the People called M.L., who at the time of trial was thirteen years old. In her testimony, M.L. stated that she first met Castor when she was between the ages of four and six. Prior to the sexual contact, Castor lived with M.L., her three siblings, and her mother as her mother's boyfriend. Prior to the incidents in question, M.L. testified that she considered Castor to be "[l]ike a father." (J.A. 84.) M.L. testified that starting in the summer of 2006, Castor would come into her room while she was sleeping on her stomach, lay down on her back, move her panties aside, and rub his penis against her vagina. The sexual activity happened while M.L.'s siblings slept in the same room. When asked, M.L. testified that she did not tell her mother about the molestation because she was afraid that her mother would "be against" her and would believe Castor instead. She also stated that she felt she had to do what Castor wanted because her mother left him in charge when she went out of town. Further, M.L. testified that she had never had sexual encounters with any other person and did not have a boyfriend. Additionally, M.L. testified that she gave birth to a son, M.D.L., on September 15, 2007. Finally, M.L. testified that Castor

---

[1] In total, Castor was charged with eight counts of Unlawful Sexual Contact in the First Degree in violation of 14 V.I.C. § 1708 (Counts I-VI, IX, & X); two counts of Aggravated Rape in the First Degree in violation of 14 V.I.C. § 1700(a) (Counts VII & VIII); two counts of Attempted Aggravated Rape in the First Degree in violation of 14 V.I.C. §§ 331(1)-(2), 1700(a) (Counts XI & XII); and one count of Child Abuse in violation of 14 V.I.C. § 505 (Count XIII).

had instructed her to tell others that "it was a boy . . . who did it," because otherwise she would be "messing up the family" and she "wouldn't be with the family" anymore. (J.A. 126-27.) During her testimony, when M.L. struggled to remember some of the specifics she had previously told police, the People entered M.L.'s statement to the police into evidence without objection.

The People also called an expert in DNA analysis, Kevin Noppinger, the director of a private DNA testing laboratory in Deerfield Beach, Florida. Noppinger compared samples of M.D.L.'s DNA to Castor's. He determined, based on his comparison of the DNA, that there was a greater than 99.9999% chance that Castor was M.D.L.'s father. In fact, Noppinger testified that the results were accurate enough to exclude the possibility of anyone else in the world being the child's father. After Noppinger's testimony, the People rested their case.[2] Castor did not call any witnesses in his defense. After instruction by the court, the jury returned a guilty verdict on each count that same day.

In its January 9, 2009 Judgment, the Superior Court sentenced Castor to twenty-five years for the aggravated rape charges, fifteen years for the unlawful sexual conduct charges, ten years for the attempted aggravated rape charges, and ten years on the child abuse charge, all to run concurrently. The court also indicated that Castor would not be eligible for parole on the aggravated rape charges for fifteen years and would not be eligible for parole on the unlawful sexual conduct charges for ten years. On October 13, 2010, Castor filed a notice of appeal and a motion to file the notice of appeal out of time. Subsequently, however, we determined that the People waived any right they may have had to challenge Castor's notice of appeal as untimely by failing to raise the issue of timeliness. *See Castor v. People*, S. Ct. Crim. No. 2010-0097, slip. op. 1-2 (V.I. Apr. 29, 2011).

On appeal, Castor argues that (1) the People failed to provide sufficient evidence that the victim was not his spouse at the time of the attacks; (2) the People failed to provide sufficient evidence that he used his status as the child's stepfather to perpetrate the attacks; (3) the People failed to provide sufficient evidence that his actions caused vaginal penetration; (4)

---

[2] The People also called Virgin Islands Police Department officers Daphne Rouse Carty and Angela Trant, who testified to gathering the DNA samples from M.L., M.D.L., and Castor and established an unbroken chain of custody for those samples.

the People failed to provide sufficient evidence as to when the attempted rapes occurred; (5) the People deprived him of due process through prejudicial comments made during opening and closing arguments; and (6) his concurrent sentences violate the Double Jeopardy Clause.

## II. JURISDICTION AND STANDARDS OF REVIEW

■ We have jurisdiction over this criminal appeal pursuant to title 4, section 32(a) of the Virgin Islands Code, which provides that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." A final, appealable judgment was entered in this case on January 9, 2009. *See, e.g., Codrington v. People*, 57 V.I. 176, 183 (V.I. 2012) (explaining that in a criminal case, a written judgment embodying the adjudication of guilt and the sentence imposed based on that adjudication constitutes a final judgment for purposes of 4 V.I.C. § 32(a)).

An appellant who challenges the sufficiency of the evidence bears a " 'very heavy burden.' " *Latalladi v. People*, 51 V.I. 137, 145 (V.I. 2009) (quoting *United States v. Losada*, 674 F.2d 167, 173 (2d Cir. 1982)). When we consider challenges to the sufficiency of the evidence, " 'we apply a particularly deferential standard of review. Following a criminal conviction, we view the evidence presented at trial in a light most favorable to the People.' " *Stevens v. People*, 52 V.I. 294, 304 (V.I. 2009) (quoting *Smith v. People*, 51 V.I. 396, 398 (V.I. 2009)). Therefore, " '[w]e will affirm a conviction if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Id.* (quoting *Smith*, 51 V.I. at 398).

■ Castor failed to raise to the Superior Court his fifth and sixth arguments concerning the prosecutor's comments during opening statements and closing arguments and the Double Jeopardy Clause. Therefore, we review those arguments for plain error. *See Nanton v. People*, 52 V.I. 466, 475 (V.I. 2009). To find a plain error, this Court must find (1) an error, (2) that is plain, and (3) that affected substantial rights. *Id.* If we determine the error meets those requirements, we may grant relief in our discretion if we feel the error seriously affects the " 'fairness, integrity, or public reputation of the judicial proceedings.' " *Id.* (quoting *United States v. Dobson*, 419 F.3d 231, 236 (3d Cir. 2005)).

## III. DISCUSSION

### A. The jury had sufficient evidence to support its verdict that Castor was not M.L.'s spouse at the time of the attacks.

Castor first argues that the People failed to provide sufficient evidence to convict under Counts I-XII, because they all required proof that M.L. and Castor were not married at the time of the sexual conduct. Castor points out that, at trial, the jury heard the following:

[Attorney Evans (for the People)]: Are you married to Mr. Castor, [M.L.]?

[M.L.]: (Shakes head from side to side.)

[Attorney Evans]: While you were living —

[Attorney Conway (Defense counsel)]: Your Honor, the last question, she shook her head, she didn't give an audible answer.

[M.L.]: No, I'm not.

(J.A. 116.) Castor argues that, because this testimony only covered whether Castor and M.L. were married on the day of trial, which occurred approximately two years after the first sexual contact, the People failed to prove that Castor and M.L. were not married at the time of the sexual contact.

 Both the aggravated rape in the first degree and unlawful sexual contact in the first degree statutes require, respectively, either sexual intercourse or sexual contact "with a person not the perpetrator's spouse." 14 V.I.C. §§ 1700, 1708. Therefore, Castor is correct that this language, commonly called the "marital rape exception,"[3] requires that the People prove that the defendant and the victim of either sex crime were not married at the time of the offense. However, "when determining the sufficiency of the evidence, we 'credit all reasonable inferences that support the verdict.'" *Nanton*, 52 V.I. at 485 n.10 (quoting *United*

---

[3] *See generally Developments in the Law: Legal Responses to Domestic Violence*, 106 HARV. L. REV. 1528, 1533 (1993) (discussing the history and evolution of the marital rape exception). *See also* Thomas L. Hafemeister, *If All You Have is a Hammer: Society's Ineffective Response to Intimate Partner Violence*, 60 CATH. U. L. REV. 919, 975 (2011) ("Due, in part, to reports that one in seven married or formerly married women had been raped by her husband, states began to eliminate the marital rape exception from their criminal laws during the 1980s. By 2005, all fifty states had criminalized marital rape.") (alteration, footnotes, and internal quotation marks omitted).

*States v. Perez*, 280 F.3d 318, 342 (3d Cir. 2002)). Throughout the testimony at trial, Castor was referred to as either M.L.'s "father," "stepfather," or mother's boyfriend, but never as her spouse. Furthermore, M.L. testified that she never requested Castor's actions or sexual attention and that both frightened her. Finally, we note that any marriage to an eleven-year-old is an illegal marriage which would be voidable at any time by the minor or her guardian. *See* 16 V.I.C. § 2 (marriage of girl under the age of fourteen is illegal and voidable); 16 V.I.C. § 4 (same if marriage to a girl under the age of fourteen was performed outside the Virgin Islands). Indeed, before such marriage could have been performed, M.L. would have needed the permission of her mother, as guardian, to do so and there is no evidence in the record that M.L.'s mother would, or did, permit her eleven-year-old daughter to marry her own boyfriend. *See* 16 V.I.C. § 36. We have no trouble determining that the foregoing, coupled with the fact that M.L. testified that she was not married to Castor at the time of trial, permitted the jury to make a reasonable inference that M.L. and Castor were not married at the time of the sexual contacts.[4]

### B. The jury had sufficient evidence to support its verdict that Castor used his authority as her stepfather to perpetrate the sexual conduct.

Castor next argues that his convictions under Counts II, IV, VI, VIII, X, and XII must be vacated because the People failed to prove that Castor used his position of authority to perpetrate the sexual contacts. Both the aggravated rape statute, for Counts VIII and XII, and the unlawful sexual

---

[4] Although not raised before us, and not critical to our decision based on our finding that there was sufficient evidence to warrant a finding that M.L. and Castor were not married at the time of the sexual contacts, we note that some courts have held that the marital rape exception is unconstitutional based on the Equal Protection Clause because it treats married and unmarried peoples differently without a rational basis for doing so. *See People v. Liberta*, 64 N.Y.2d 152, 474 N.E.2d 567, 573-74, 485 N.Y.S.2d 207 (1984) ("We find that there is no rational basis for distinguishing between marital rape and nonmarital rape. The various rationales which have been asserted in defense of the exemption are either based upon archaic notions about the consent and property rights incident to marriage or are simply unable to withstand even the slightest scrutiny. We therefore declare the marital exemption for rape in the New York statute to be unconstitutional."). Because the issue was not raised, we do not pass on the constitutionality of the marital rape exception in this case, and leave it up to the Legislature to decide whether it will revisit this language and determine if it comports with the contemporary public policy of the Virgin Islands.

contact statute, for Counts II, IV, VI, and X, require proof of sexual intercourse or contact with an individual "under sixteen years of age residing in the same household as the perpetrator, and [that] force, intimidation, or the perpetrator's position of authority over the victim [be] used to accomplish the sexual" act or contact.[5] 14 V.I.C. §§ 1700(a)(2), 1708(3). Specifically, Castor admits that his relationship as M.L.'s stepfather was a position of power but argues that:

> Mr. Castor never hit M.L. Mr. Castor never threatened M.L. He never threatened to physically hurt her, her sister, her little brother, nor her mother. Mr. Castor never commanded or ordered M.L. to touch his penis. In fact, he never commanded or ordered M.L. to do anything. While Mr. Castor did hold a position of authority over M.L. the evidence was insufficient to prove, beyond a reasonable doubt, that he affirmatively "used" that authority in order to accomplish the act of inserting his penis into her vagina.

(Appellant Br. 14 (formatting and citations omitted).)

We have never discussed, nor has any Virgin Islands court addressed, what the People must prove in order to show that an individual used his position of authority to perpetrate a rape. However, other courts, in interpreting similar or identical requirements in their statute, require the People to show that the position of authority of the alleged sexual perpetrator "cause[d] [the victim] to submit to the sexual contact." *State v. Hanson*, 514 N.W.2d 600, 603 (Minn. Ct. App. 1994); *see also People v. Premo*, 213 Mich. App. 406, 540 N.W.2d 715, 717-18 (1995) (including where "one party is constrained by subjugation to do what free will would refuse" as use of authority); *State v. Anderson*, No. M2009-00494-CCA-R3-CD, 2011 Tenn. Crim. App. LEXIS 38, at *17 (Tenn. Ct. App. Jan. 20, 2011) (unpublished) (holding that where the unlawful sexual contact is "accomplished" through use of the defendant's position of trust or authority the requisite element is satisfied).

---

[5] The People retort that there was sufficient evidence to show force, based on M.L.'s testimony about one of the encounters in March 2007 happening after Castor held her down. Although we acknowledge that M.L. testified to as much, we note that the People did not charge Castor with aggravated rape through force nor did the jury instructions indicate that they could convict for aggravated rape based on force.

■ In this case, the testimony disclosed that Castor had access to M.L. when she was vulnerable with the entire house asleep late at night only because of his position as her stepfather. M.L. testified that she did not tell her mother about the sexual contact, and thereby deter any future contact, because she thought that her mother would believe her stepfather instead of her. Moreover, Castor exploited his position of authority to continue his attacks and avoid detection by telling M.L. that if she told on him, she would be "messing up the family" and she "wouldn't be with the family" anymore. (J.A. 126-27.) Finally, M.L. also testified that, because her mother left Castor in charge, she had to do whatever he wanted her to do. Based on the foregoing, the jury could rationally conclude that, absent the stepfather relationship, Castor would have lacked access to the child to perpetrate the sexual assaults and M.L. would have cried out for help to her siblings sleeping in the same room and that she would have sought help after the initial encounter.

### C. The jury had sufficient evidence of penetration to support its verdict.

In his next sufficiency argument, Castor asserts that the jury lacked sufficient evidence to determine that he penetrated M.L. as required for Counts VII and VIII. Specifically, Castor argues that there was no evidence that his penis ever entered M.L.'s vagina, rather than simply rubbing on the surface of it.

Aggravated rape in the first degree requires "sexual intercourse." 14 V.I.C. § 1700(a). Sexual intercourse is defined as "vaginal intercourse or any insertion, however slight, of a hand, finger or object into the vagina, vulva, or labia, excluding such insertion for medical treatment or examination." 14 V.I.C. § 1699(d). Additionally, title 14, section 1704 states that "[a]ny sexual penetration, however slight, is sufficient to complete the crime" of rape.

■ On this record, the evidence is somewhat contradictory on this point. Castor correctly points out that M.L. testified throughout her testimony at trial that Castor rubbed his penis "on," "around," or "against" her vagina. When asked directly whether Castor's penis penetrated her vagina by the police, M.L. answered in her statement: "No, not really. It never went all the way in, it would only go on the side." (J.A. 304.) This statement was read aloud to the jury during M.L.'s testimony. In the same line of questioning, the prosecution asked M.L. if "Mr. Castor

[was] able to put his penis into your vagina the whole way?" to which she answered "I don't know. I don't remember." (J.A. 107.) Likewise, LaRoque, the school nurse, testified:

> I was asking [M.L.] questions like was he having any penetration? Was he putting his penis into her vagina? She said not all the way in, but she wasn't quite sure of what I meant by penetration. And even though I was trying to explain to her, she didn't really answer the question. She said she knew he was doing it around her vagina, but she wasn't sure how far he was going in.

(J.A. 64-65.)

Based on this record it is clear that the jury had sufficient evidence to determine that partial insertion occurred, even in the face of the equivocal testimony. First, M.L.'s phrase "[i]t never went all the way in," (J.A. 304) implied that it did go some of the way in, which is all that is necessary under the law for sexual intercourse. Second, although pregnancy without penetration is possible, it is a "rare event" with only a handful of reported cases in the history of western medicine. *See* Eyal Sheimer & Miriam Katz, *Pregnancy without Penetration*, 83 EUR. J. OF OBSTETRIC, GYNECOLOGY, & REPRODUCTIVE BIOLOGY 121, 121 (1998) (citing G. Gerber, *A Case of Pregnancy Without Penetration of the Penis into the Vagina* [trans. from *Ein Fall von Schwangerschaft ohne Immissio penis in die Vagina*], 88 ZENTRALBL GYNAKOL 227, 227-29 (1966)). Therefore, the jury's inference that partial insertion occurred — especially in light of the fact that M.L. became pregnant by the contact — cannot be considered irrational. Thus, despite the ambiguities in the record, the jury had sufficient evidence to convict on this charge.

### D. The People provided sufficient evidence as to when the attempted rapes occurred.

Castor's final sufficiency argument centers around the timing of the attempted rape charges. Specifically, Castor argues that M.L. could not recall during her trial testimony specifically when he attempted to rape her. In the Information, Castor was charged with attempting to rape her in March 2007. Therefore, he posits, the People failed to provide sufficient testimony in conformity with the allegations in the Information to sustain the convictions.

■ In making this argument, Castor relies exclusively on *Government of the V.I. v. Joseph*, 770 F.2d 343 (3d Cir. 1985). In that case, the United States Court of Appeals for the Third Circuit found that a conviction for rape of an eight year old girl had to be overturned because the People failed to provide any evidence that the defendant engaged in the act during the months of May or June 1983 as alleged in the Information. *Id.* at 347. However, Castor's reliance on *Joseph* is misplaced. At trial, M.L. was unsure of when Castor tried but failed to penetrate her. But, the jury also had before it without objection M.L.'s statement, which was taken in April 2007, much closer in time to the incidents in question, in which she stated clearly that "[i]n the begin [sic] of March he came into my room and tried to have sex with me but I keep [sic] moving and he went out of the room." (J.A. 303.) Her trial testimony is largely consistent, although she mentioned at trial that Castor held her down before leaving and she was unable to recall in which month it happened. In any event, the jury was entitled to rely on the evidence before it, including M.L.'s statement, to determine the timeframe of Castor's attempted penetration. Because the jury here had some evidence of the timeframe, unlike the jury in *Joseph*, and we are required to give the jury's weighing of the evidence deference, we reject Castor's argument.

### E. The Superior Court did not commit plain error by failing to grant a new trial *sua sponte* based on prosecutorial misconduct.

Castor next argues that the People violated his due process rights by engaging in misconduct in opening statements and closing arguments. Specifically, Castor objects to the following statement from the prosecutor in his opening statement: "not only are the People of the Virgin Islands asking you to find Mr. Antoniel Castor guilty, but also the victim, M.L., she's also asking you to find Mr. Castor guilty," (Supp. App. at 78), and the following statements in the prosecutor's closing arguments: "[s]he[, M.L.,] has placed her trust and confidence in you, that you will do the correct thing," (J.A. 216), and: "we're asking on behalf of . . . [M.L.] to come back guilty on all counts." (J.A. 222.) None of these statements were objected to before the Superior Court, so we are left to review them for plain error.

■ A prosecutor may argue any reasonable inference drawn from the evidence presented at trial, *see United States v. Young*, 470 U.S. 1, 8 n.5,

105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985), but the People are forbidden to make arguments based on evidence not presented at trial, to misstate the evidence presented, or to mislead the jury as to the inferences it may draw. *See Nunez v. Gov't of the V.I.*, D.C. Crim. App. No. 2005-104, 2010 U.S. Dist. LEXIS 76951, at *24 (D.V.I. App. Div. July 28, 2010). The People are also forbidden from appealing to the prejudices or emotions of the jury or using closing arguments to attempt to shift the burden of proof to the defendant. *See, e.g., United States v. Stephens*, 571 F.3d 401, 408-09 (5th Cir. 2009). However, as the Third Circuit concisely set out concerning appellate review of charges that the prosecution has violated the Due Process Clause of the Fourteenth Amendment by misconduct:

> Not all prosecutorial misconduct violates this right. "[T]he practicalities of judicial administration . . . preclude us from reversing a jury verdict every time" a prosecutor commits misconduct. *Gov't of the Virgin Islands v. Joseph*, 770 F.2d 343, 349 (3d Cir. 1985). "To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial." *Greer v. Miller*, 483 U.S. 756, 765, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987) (internal quotations omitted). "It is not enough that the prosecutor's remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (internal quotations omitted). The touchstone of our inquiry is "not the culpability of the prosecutor" but the fairness of the trial. *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982); *see also id.* ("[T]he aim of due process is 'not punishment of society for the misdeeds of the prosecutor but avoidance of an unfair trial to the accused' "). We must determine whether the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process in light of the entire proceeding." *United States v. Morena*, 547 F.3d 191, 194 (3d Cir. 2008) (internal quotations omitted). In making this determination, we examine the curative instructions, if any, given by the trial court; the weight of the properly admitted evidence against the defendant; and the prosecutor's improper actions. *Id.*

*United States v. Liburd*, 607 F.3d 339, 344, 53 V.I. 890 (3d Cir. 2010).

██ ██ Even assuming, without deciding, that the People acted improperly by making a request for a conviction on behalf of a victim

who is also the chief complaining witness, there are no grounds to reverse Castor's conviction. The Superior Court, while not giving an immediate curative instruction to the unobjected-to statement, did instruct the jury that they were not to treat any argument or statement from the attorneys as evidence and to convict solely on the evidence presented from the witnesses and exhibits. Although this kind of general instruction is not as effective as an immediate curative instruction would have been, we have previously held that this kind of instruction is properly considered as mitigating any prejudice to a defendant when dealing with prosecutorial misconduct claims. *See Mulley v. People*, 51 V.I. 404, 415 (V.I. 2009). In addition, it is well-established that an appellate court must presume that jurors followed the instructions that they were given. *Augustine v. People*, 55 V.I. 678, 686 (V.I. 2011) (quoting *Liburd*, 607 F.3d at 344). Furthermore, the strength of the evidence here is simply overwhelming. M.L. identified Castor as her attacker and testified specifically as to how he attacked her. Moreover, her trial testimony was largely consistent with her earlier statement to police. Indeed, the DNA paternity evidence, which conclusively showed that Castor had sexual contact with M.L. when she was eleven years old, was extremely strong evidence in itself and lent additional credibility to M.L.'s recollections of how and when Castor had engaged in inappropriate sexual contact with her. We also note that the timeline M.L. gave of the attacks, between September 2006 and March of 2007, is consistent with the birth of M.D.L, which occurred in the middle of September 2007. In short, based on the strength of the evidence and the curative instruction given, the statements identified by Castor did not so infect the trial with unfairness as to make his convictions plainly erroneous.

### F. We must nevertheless reverse Castor's sentences and remand for resentencing.

Castor's last argument focuses on his sentences which he asserts violate double jeopardy.[6] Specifically, Castor argues that the unlawful sexual contact convictions, Counts I, II, III, IV, V, VI, IX, and X, should have merged and he should only have been given one sentence for all of

---

[6] "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . ." U.S. CONST. amend. V. The Fifth Amendment to the Constitution is applicable to the Virgin Islands through the Revised Organic Act of 1954, §3.

them. Likewise, Castor argues that the aggravated rape charges, Counts VII and VIII, should have merged and he should have received a single sentence for both. Additionally, Castor argues that the attempted rape charges, Count XI and XII, should also have merged. Finally, Castor argues that the child abuse charge, Count XIII, should have merged into the same single sentence as the unlawful sexual contact convictions. Again, these arguments were not raised below, so we review only for plain error.

Title 14, Section 104 of the Virgin Islands Code controls whether two offenses are the "same offense" for the purposes of the Fifth Amendment in the Virgin Islands, and states:

> [a]n act or omission which is made punishable in different ways by different provisions of this Code may be punished under any of such provisions, but in no case may it be punished under more than one. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other.

As we explained in *Williams v. People*, 56 V.I. 821, 832 (V.I. 2012), section 104 of the Virgin Islands Code provides that, notwithstanding the fact that an individual can be charged and convicted of violating multiple provisions of the Virgin Islands Code, that individual may only be punished for one offense for each discrete act or indivisible course of conduct.

Here, Castor was charged with and convicted of the following offenses: Count I, Unlawful Sexual Contact in the First Degree for sexual contact with a minor under the age of thirteen during the month of July 2006; Count II, Unlawful Sexual Contact in the First Degree for sexual contact with a minor under the age of sixteen by use of his position of authority as her mother's boyfriend during the month of July 2006; Count III, Unlawful Sexual Contact in the First Degree for sexual contact with a minor under the age of thirteen during the month of September 2006; Count IV, Unlawful Sexual Contact in the First Degree for sexual contact with a minor under the age of sixteen by use of his position of authority as her mother's boyfriend during the month of September 2006; Count V, Unlawful Sexual Contact in the First Degree for sexual contact with a minor under the age of thirteen during the month of November 2006; Count VI, Unlawful Sexual Contact in the First Degree for sexual contact with a minor under the age of sixteen by use of his position of authority

as her mother's boyfriend during the month of November 2006; Count VII, Aggravated Rape in the First Degree for having sexual intercourse with a minor under the age of thirteen between the months of November 2006 and March 2007; Count VIII, Aggravated Rape in the First Degree for having sexual intercourse with a minor under the age of sixteen by use of his position of authority as her mother's boyfriend between the months of November 2006 and March 2007; Count IX, Unlawful Sexual Contact in the First Degree for sexual contact with a minor under the age of thirteen during the month of February 2007; Count X, Unlawful Sexual Contact in the First Degree for sexual contact with a minor under the age of sixteen by use of his position of authority as her mother's boyfriend during the month of February 2007; Count XI, Attempted Aggravated Rape in the First Degree for attempting to engage in sexual relations with a minor under the age of thirteen during the month of March 2007; Count XII, Attempted Aggravated Rape in the First Degree for attempting to engage in sexual relations with a minor under the age of sixteen by use of his authority as her mother's boyfriend during the month of March 2007; Count XIII, Child Abuse for sexual conduct with a minor.

 It appears from the Information that although Castor was charged with several distinct acts over several months, he was nonetheless convicted of more than one crime based on each individual act — for instance, the same act forms the basis for Counts I and II. Therefore, as we found in *Williams*, such crimes "constitute a single offense under section 104." *Williams*, 56 V.I. at 832. *See also People v. Pearson*, 42 Cal. 3d 351, 228 Cal. Rptr. 509, 721 P.2d 595, 599-600 (1986) ("[W]hen multiple convictions are based on a single act . . . or an indivisible course of conduct, the use of such convictions must not result in the defendant being 'punished under more than one' Penal Code provision."). Accordingly, the Superior Court's failure to adhere to section 104, notwithstanding the fact that the trial court provided for the sentences to run concurrently, is a plain error that requires reversal. *See Williams*, 56 V.I. at 832 ("[C]onvicting and punishing Williams of multiple crimes arising from the same act constitutes plain error, despite the fact that Williams's sentences for second degree murder, first degree assault, and third degree assault were ordered to be served concurrently." (citing *Ball v. United States*, 470 U.S. 856, 864-65, 105 S. Ct. 1668, 84 L. Ed. 2d 740 (1985))). On remand, "the proper procedure is to sentence the defendant for one offense and stay the imposition of any punishment for

all the remaining offenses which arose out of the same act or indivisible course of conduct." *Id.* at 834 n.9.

## IV. CONCLUSION

Contrary to Castor's arguments, the People presented sufficient evidence to support each of his convictions. Additionally, given the overwhelming evidence of guilt in this case, the trial court's instructions, and the totality of circumstances in this case, we find that any prosecutorial misconduct in this case does not warrant a new trial. However, the Superior Court committed plain error where it failed to sentence Castor in conformity with 14 V.I.C. § 104. Accordingly, we remand for resentencing, but otherwise affirm Castor's convictions.