

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-19-2008

# USA v. Morena

Precedential or Non-Precedential: Precedential

Docket No. 07-1297

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Morena" (2008). *2008 Decisions.* Paper 181.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/181

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-1297
_____

UNITED STATES OF AMERICA

v.

WILLIAM J. MORENA,

Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 05-cr-00274)

District Judge: Honorable David S. Cercone
_____

Argued September 11, 2008
_____

Before: SLOVITER, FUENTES and ALDISERT,
Circuit Judges

(Filed: November 19, 2008)

Lisa P. Freeland
      Federal Public Defender
Renee Pietropaolo (Argued)
      Assistant Federal Public Defender
1450 Liberty Center
1001 Liberty Avenue
Pittsburgh, PA 15222

      Counsel for Appellant

Mary Beth Buchanan
      United States Attorney
Laura Schleich Irwin (Argued)
      Assistant United States Attorney
700 Grant Street, Suite 4000
Philadelphia, PA 15219

      Counsel for Appellee

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

William J. Morena appeals from the judgment on a verdict of the United States District Court for the Western District of Pennsylvania finding him guilty of being a felon in possession of a firearm and possessing that firearm, an unregistered sawed-off shotgun with a barrel of less than

eighteen inches in length. Morena also appeals the enhancement of his sentence for possession of a firearm in connection with another felony. We are asked to decide whether: (1) the government's injection into the trial of extensive evidence of uncharged drug use and transactions by Morena, as well as evidence of Morena's prior non-felony convictions, amounted to prosecutorial misconduct and plain error; (2) the District Court exceeded its discretion in admitting evidence of Morena's drug use and dealing for the purpose of showing background and motive; (3) Morena's Sixth Amendment right to counsel was violated because his attorney faced possible obstruction of evidence charges for actions in the case and thus acted under an actual conflict of interest; and (4) the District Court erred by applying a four-point sentencing enhancement for possession of a firearm in connection with another felony, based on uncharged evidence of drug dealing.[1] We conclude that the government's

---

[1] The District Court properly exercised jurisdiction under 18 U.S.C. § 3231. This Court has jurisdiction over Morena's direct appeal pursuant to 28 U.S.C. §1291. In addition, this Court has jurisdiction over Morena's appeal from judgment of sentence based on 18 U.S.C. §§ 3742(a)(1) and (a)(2).

Because no objection on the basis of prosecutorial misconduct was made at trial, this Court reviews Morena's claim of prosecutorial misconduct for plain error. United States v. Olano, 507 U.S. 725, 731 (1993). This Court has discretion to correct a plain error affecting substantial rights only if the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." Id. at 732 (internal quotation marks and

repeated injection of prejudicial drug evidence into the trial testimony constituted prosecutorial misconduct resulting in a denial of due process and that the District Court plainly erred in allowing introduction of the quantum of this evidence. We will reverse and remand for a new trial.

I.

Federal prosecutors have a special and solemn duty to refrain from improper methods of obtaining a conviction. "The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." Berger v. United States, 295 U.S. 78, 88 (1935). As such, a prosecutor "may prosecute with earnestness and vigor–indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones." Id.

Improper prosecutorial conduct rises to the level of constitutional error "when the impact of the misconduct is to distract the trier of fact and thus raise doubts as to the fairness of the trial." Marshall v. Hendricks, 307 F.3d 36, 67 (3d Cir. 2002). The test for prosecutorial misconduct is whether the conduct "'so infected the trial with unfairness as to make the

citation omitted).

4

resulting conviction a denial of due process'" in light of the entire proceeding. Id. at 64 (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). In conducting this analysis, this Court assesses the prosecutor's improper actions, the weight of properly admitted evidence and any curative instructions given by the trial court. Moore v. Morton, 255 F.3d 95, 112-113 (3d Cir. 2001).

A Rule 404(b) Federal Rules of Evidence analysis guides our determination that the government's systematic injection of evidence of drug use and dealing by Morena into the trial constituted prosecutorial misconduct in violation of due process.[2] For prior "bad acts" evidence to be admissible, the Supreme Court has directed that (1) the evidence must have a proper purpose under Rule 404(b); (2) it must be relevant under Rule 402; (3) its probative value must outweigh its prejudicial effect under Rule 403; and (4) the court must instruct the jury to

---

[2] Rule 404(b) provides:

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Rule 404(b), Federal Rules of Evidence.

5

consider the evidence only for the limited purpose for which it is admitted. Huddleston v. United States, 485 U.S. 681, 691-692 (1988). Admission of bad acts evidence must be carefully scrutinized because, "[a]lthough the government will hardly admit it, the reasons proffered to admit prior-bad-act evidence may often be a Potemkin, because the motive, we suspect, is often mixed between an urge to show some other consequential fact as well as to impugn the defendant's character." United States v. Sampson, 980 F.2d 883, 886 (3d Cir. 1992).

In this case, police found a sawed-off shotgun concealed in a heating duct of Morena's home during a warranted search. Informant Dale Palmer claimed to have twice seen Morena with the shotgun and provided probable cause for the search by conducting a "controlled buy" of crack cocaine from Morena. Morena was never charged with any drug offenses. In pretrial conference, the government contended that some discussion of drugs was necessary for background and that it would show that Morena possessed the shotgun to protect a drug dealing enterprise. App. 60. The District Court cautioned about the prejudicial danger in admitting drug evidence, but ruled that drug evidence was admissible for motive and was relevant "to the presentation of facts as they had occurred." Id. at 75.

However, the government repeatedly exceeded its pretrial proffer, systematically injecting inadmissible drug evidence into the two-day trial. The record reveals that, time and again, the government introduced prejudicial drug evidence with no proper

purpose under Rule 404(b). Over the two-day trial, the District Court declared at least <u>five times</u> that the government's use of drug evidence was "too prejudicial" or warned the prosecutor that the prejudice from the drug evidence outweighed its probative value. Nevertheless, the District Court ultimately failed to prevent the rampant injection of inadmissible evidence into the trial and its single limiting instruction to the jury was inadequate to cure the prejudice.

The government's misconduct started as soon as it called its first witness. The prosecutor elicited detailed testimony about heroin dealing not connected to Morena and was warned by the Court at sidebar to go no further. See App. 131-132 ("[A]ll of this detail and this coverage of this drug transaction is unnecessary and prejudicial. . . . [Y]ou've laid your background for it. I think you got in what you needed to. I think you should move on."). The government disregarded this direction from the District Court. Immediately thereafter, it elicited testimony about a 500-bag heroin transaction for which Morena was not ever charged or connected. Id. at 139. The District Court admonished the government again, and gave its only limiting instruction–a reminder to the jury to keep in mind that this was not a drug case. Id. at 140.

The government continued to cross the line with improper drug evidence in the face of explicit prohibition by the District Court. When Morena sought to establish his defense that George Mushinsky, the registered owner of the shotgun, had

7

lived in Morena's house and concealed the shotgun there while Morena was incarcerated for a probation violation, the government asked Morena's wife on cross-examination how many times her husband had violated probation by failing urine tests for drugs. Then, on cross-examination of Morena's mother, the government asked, "How long has [Morena] been a drug user?", prompting the District Court to again warn, "Come on. Let's move on, please." Id. at 340. The government's next question was, "And you never talked to him about his drug use?", upon which the defense objected. Id. At sidebar, the District Court refused to entertain the government's arguments that such questioning went to the mother's credibility or was a necessary response to the defense and again identified the use of drug evidence as improper and too prejudicial.[3]

On the last day of trial, final defense witness Ron Sherwood testified that he helped George Mushinsky move into Morena's home during the summer of 2004 and that Sherwood saw the shotgun in Mushinsky's possession at that time. On cross-examination, the government asked Sherwood, "Did you know the defendant had a drug problem?" Id. at 357. At this, the District Court issued a stern rebuke of the prosecutor's

---

[3] The District Court: "I mean, this isn't what the witness was called for. . . . It was offered by [defense counsel] to show time frames. Now you're opening up this door into an area about his use of drugs, and it's prejudicial. . . . It's too prejudicial." Id. at 340-341.

misconduct throughout the trial and threatened to declare a mistrial.[4] The government refrained from further misconduct for

---

[4] The District Court:

> If I hear one more reference to drugs about the defendant that I find is irrelevant, I'm going to be tempted to declare a mistrial. . . .You've crossed the line. I mean, it's like you're trying this case on drugs. There's more evidence in this case about drugs than about the gun. It's too prejudicial. . . . Every opportunity you have, you insert drugs in this case. . . . What you're doing, you've done it systematically throughout the trial, is every time there was a proper relevancy to drugs, you then take it, and you take it into an area that is irrelevant. And you're–and it's very obvious from the record what is happening in this case. . . . You're getting into other criminal activity, and it's, it's extremely prejudicial, and the probative value is outweighed by the, the prejudicial impact. . . . 90 percent of this case has been about drugs and ten percent about the firearms. . . . [I]f it comes out again and there's a motion, the Court will seriously consider it. And if I grant it, it will be with double jeopardy attaching for prosecutorial misconduct, because I have clearly said throughout the trial that you're stepping over the boundary.

Id. at 358-360.

the brief remainder of the trial, but by this point the damage had been done. The introduction of inadmissible drug evidence had permeated the proceedings with prejudice.

II.

The government contends, however, that even if prejudicial evidence was erroneously admitted it nonetheless presented "firm and sufficient evidence of [Morena's] possession of the sawed-off shotgun." Appellee's Br. at 89. "When the evidence is strong, and the curative instructions adequate, the Supreme Court has held the prosecutor's prejudicial conduct does not deprive a defendant of a fair trial." Moore, 255 F.3d at 113. Moreover, "[w]e are bound, after a jury has delivered a guilty verdict, to interpret the evidence in a light most favorable to the government." United States v. Pungitore, 910 F.2d 1084, 1097 (3d Cir. 1990). The government contends that Palmer's testimony that he twice saw Morena with the shotgun, plus the evidence of two shotgun shells found in Morena's bathroom, a digital scale found in Morena's kitchen, and the presence of blue tape on both the gun and digital scale provides sufficient basis for the jury's guilty verdict regardless of any erroneous admission of drug evidence.

We decide that the government's evidence was not sufficient to overcome the prejudice resulting from the prosecutor's misconduct. Even viewed in the light most favorable to the government, the case against Morena boils down to the testimony of one witness who has significant

10

credibility issues and a few items of circumstantial evidence.

In <u>Berger</u>, the Supreme Court found that the case for a conspiracy conviction against the defendant "may properly be characterized as weak–depending, as it did, upon the testimony of . . . an accomplice with a long criminal record." <u>Berger</u>, 295 U.S. at 89. Here, similarly to <u>Berger</u>, the government's case hinged on the testimony of an associate with a long criminal record. Palmer, the key witness, was a long-time drug addict with multiple criminal convictions who admitted to changing his story at least once to get money for drugs, and who was cooperating with police to mitigate the consequences of his own criminal charges. It was largely Palmer's word against Morena's defense that the shotgun's true owner, George Mushinsky, had left the gun in the house without Morena's knowledge.

Because only Palmer ever claimed to have seen Morena with the gun, "a finding of guilt really hinged on a credibility determination" between Palmer's testimony and Morena's defense. Appellant's Br. at 71. In such a case, improper suggestions and insinuations "are apt to carry much weight against the accused when they should properly carry none." <u>Berger</u>, 295 U.S. at 88. As this Court has noted, "Character evidence is not rejected because it is irrelevant. On the contrary, 'it is said to weigh too much with the jury and to so overpersuade them as to prejudice one with a bad general record and deny him a fair opportunity to defend against a particular charge.'" <u>Sampson</u>, 980 F.2d at 86 (quoting <u>Michelson v. United States</u>, 335 U.S. 469, 475-476 (1948)); <u>see</u> <u>also</u> <u>Virgin Islands</u>

11

v. Toto, 529 F.2d 278, 283 (3d Cir. 1976) (continued integrity of proceedings is near impossible after admission of improper prejudicial evidence because "[a] drop of ink cannot be removed from a glass of milk").

As in Berger, "if the case against [Morena] had been strong, or, as some courts have said, the evidence of his guilt 'overwhelming,' a different conclusion might be reached." Berger, 295 U.S. at 89. However, this Court has held that even "finding the evidence 'more than sufficient' for conviction does not necessarily end the constitutional inquiry." Moore, 255 F.3d at 112. The reviewing court must always factor the prejudicial effect of the prosecutor's impropriety into the jury's finding of guilt and then assess its impact. Id. at 112-113. Here, the prejudicial impact was great, and in the absence of overwhelming evidence of guilt, the strength of the government's evidence fails to outweigh the prosecutorial misconduct.

## III.

Finally, the District Court's limiting instructions were inadequate to cure the prejudice from the prosecutorial misconduct. After its initial reprimand of the government during examination of the first government witness, the District Court halted testimony to advise the jury to remember that Morena was on trial for firearm possession, not any drug charges.[5] This was

---

[5] The District Court:

the only limiting instruction given to the jury. Further, the brief instruction was couched as a "reminder," and did not directly charge the jury to disregard the improper references to drug use and collateral drug transactions. During final instructions, the District Court did caution the jury that Morena "is only on trial for these two counts and no other criminal conduct that has been mentioned or alluded to." App. 482. This general instruction was hardly a specific direction to disregard the drug evidence. Moreover, even a very strong jury instruction to disregard a prosecutor's conduct may nevertheless result in a denial of due process in the context of the entire trial where, as here, the evidence is marginal and the prejudicial conduct significant. Moore, 255 F.3d at 118, 120. Because of the highly prejudicial nature of the evidence, the District Court's instructions to the jury did not cure the prosecutor's misconduct.

---

> Ladies and gentleman of the jury, remember, this case is about the defendant in this case [sic] is charged with possession of a firearm by a convicted felon and possession of an unregistered firearm. He is not charged with any drug offenses. All this evidence about drugs is being offered for the limited purpose of showing how the police officers investigated this matter. I just think that point has to be made, because there's been quite a bit of testimony about drug trafficking in this case.

App. 140.

13

During the entire trial, the government's systematic presentation of prejudicial drug evidence constituted misconduct in violation of due process. "[W]e have not here a case where the misconduct of the prosecuting attorney was slight or confined to a single instance, but one where such misconduct was pronounced and persistent, with a probable cumulative effect upon the jury which cannot be disregarded as inconsequential." Berger, 295 U.S. at 89. Accordingly, Morena was denied due process by the unfairness of the trial and it was plain error for the District Court to permit the government's persistent introduction of inadmissible drug evidence.

IV.

Because we reverse and remand on the basis of prosecutorial misconduct regarding drug evidence, it is not necessary to meet Morena's additional contentions, namely, that the introduction and admission of Morena's prior non-felony convictions was prosecutorial misconduct and plain error; that the District Court exceeded its discretion in admitting evidence of Morena's drug use and dealing for the purpose of showing background and motive; that Morena's Sixth Amendment right to effective assistance of counsel was violated because his attorney faced possible obstruction of evidence charges in the case and thereby acted under an actual conflict of interest; and that the District Court erred by applying a four-point sentencing enhancement for possession of a gun in connection with another felony.

With regard to Morena's Sixth Amendment claim,

14

however, we remind the parties that in this Court an actual conflict of interest claim, like other types of ineffective assistance of counsel claims, is generally not cognizable in the first instance on direct appeal. Such claims are better reserved for 28 U.S.C. § 2255 actions. See United States v. Cocivera, 104 F.3d 566, 570 (3d Cir. 1996); United States v. Gambino, 788 F.2d 938, 951 (3d Cir. 1986). The rationale behind this practice is that collateral review allows for adequate factual development of the claim, especially because ineffective assistance claims "'frequently involve questions regarding conduct that occurred outside the purview of the district court and therefore can be resolved only after a factual development at an appropriate hearing.'" Government of Virgin Islands v. Zepp, 748 F.2d 125, 133 (3d Cir. 1984) (quoting United States v. Swinehart, 617 F.2d 336, 340 (3d Cir. 1980)); see also Cocivera, 104 F.3d at 570 (same). This rationale "is equally applicable to claims of ineffective assistance of counsel based on a conflict of interest as to those based on trial counsel's incompetence." Gambino, 788 F.2d at 951.

Only in the rare case where facts showing an actual conflict of interest are clear on the record, and no waiver of the right to conflict-free counsel was evident, has this Court made an exception and found an ineffective assistance claim based on conflict of interest cognizable on direct appeal. Zepp, 748 F.2d at 133-134 (where trial counsel faced potential criminal liability for aiding and abetting destruction of drug evidence and his independent personal knowledge of the circumstances of the charges made him a witness for the prosecution, on those facts

15

alone it was an actual conflict of interest for him to have represented the defendant in her trial for cocaine possession and destruction of the same evidence).

This Court has established that defense counsel's potential criminal or professional liability for actions in a case, even in the absence of direct proof of wrongdoing, may constitute an actual conflict with representation of a client in that case. See id. at 136; see also United States v. Greig, 967 F.2d 1018, 1022-1023 (5th Cir. 1992) (attorney who tried to persuade his client's separately represented co-conspirator not to cooperate with the government had an actual conflict of interest arising from his own unethical and possibly criminal behavior), but see United States v. Merlino, 349 F.3d 144, 151, 152 (3d Cir. 2003) (on appeal of denial of waiver of conflict-free counsel) (agreeing that "[a]n attorney who faces criminal or disciplinary charges for his or her actions in a case will not be able to pursue the client's interests free from concern for his or her own" but finding that only a "potential for conflict" existed where defense counsel faced possible criminal liability for attempting to influence the testimony of his client's co-conspirator).

Nevertheless, if there is any ambiguity on the record whether an actual conflict exists, this Court will abstain from addressing the claim on direct appeal. See, e.g., Gambino, 788 F.2d at 953 ("While the evidence strongly indicates that there may have been a conflict, . . . [b]oth parties have advanced various, plausible interpretations of the trial strategy employed

16

by [defense counsel]. Consequently, we cannot approach this record with the sanguinity envisioned by Zepp."). The exception articulated in <u>Zepp</u> is limited to "those exceptional situations that lend themselves to only one conclusion–that trial counsel labored under an actual conflict of interest." <u>Id.</u>

\* \* \* \* \* \*

The judgment of the District Court will be reversed and the proceedings remanded for a new trial.

17