**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
———

No. 16-1968
——————

DERRICK G. RAGAN,
                                        Appellant

v.

SECRETARY PENNSYLVANIA
DEPARTMENT OF CORRECTIONS;
SUPERINTENDENT GRATERFORD SCI;
DISTRICT ATTORNEY PHILADELPHIA
——————

On Appeal from the United States District Court for the
Eastern District of Pennsylvania
(D.C. No. 2-00-cv-02092)
District Judge:  Hon. Joseph F. Leeson, Jr.

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 3, 2017

Before:  CHAGARES, SCIRICA, and FISHER, <u>Circuit Judges</u>.

(Filed: April 28, 2017)
——————

OPINION[*]
——————

---

[*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Circuit Judge.

Petitioner Derrick Ragan ("Ragan") appeals from the District Court's order denying his petition for writ of habeas corpus challenging his conviction in Pennsylvania state court. For the reasons that follow, we will affirm.

I.

We write solely for the parties and therefore recount only the facts relevant to our disposition. On June 15, 1990, Anthony Thomas' ("Thomas") car was stopped at a traffic light. He was driving, and sitting next to him in the passenger's seat was Steven Guilford ("Guilford"). Another car pulled alongside Thomas' car in the opposite lane. This second vehicle was driven by Ragan; Jerry Burton ("Burton") was in the passenger's seat and, therefore, immediately adjacent to Thomas. Shots fired from Ragan's vehicle into Thomas' car, striking Thomas. Thomas died and Guilford escaped uninjured.

At the scene of the crime, Guilford told a police detective that he saw Ragan lean over Burton and "start[] shooting." Appendix ("App.") 377. In the days following, Guilford also identified Ragan as the shooter to Thomas' sister, girlfriend, and friend, and Varsella Guilford, Guilford's mother ("Ms. Guilford").

At trial, Guilford and Ms. Guilford each recanted their prior police statements identifying Ragan as the shooter, testifying that they did not know who shot Thomas. The government argued that the witnesses changed their testimony because they were intimidated by Ragan or his relatives. In support, the prosecution, inter alia, elicited testimony from a neighborhood resident about her fear of testifying and introduced one of

2

Guilford's prior statements saying that he did not want Ragan to know he was speaking with the police.

The government presented evidence of motive, including Guilford's description to the police of a pre-shooting argument between Ragan and Thomas over money, and a police statement from a witness asserting that Ragan had expressed an intent to kill Thomas because of a prior incident. Forensic evidence established that the bullets entered Thomas' car at an angle consistent with where Ragan was sitting. The defense's case consisted of character evidence that Ragan, who had no prior criminal history, was known to be peaceful and law-abiding.

On July 9, 1991, a jury found Ragan guilty of first degree murder. Post-verdict motions were denied and Ragan was sentenced to life imprisonment. On direct appeal, the Pennsylvania Superior Court affirmed Ragan's conviction and sentence, and the Pennsylvania Supreme Court declined review. Ragan filed a petition under the Pennsylvania Post-Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. §§ 9541, et seq. His petition was denied on June 9, 1997, a decision which the Superior Court affirmed.[1]

On April 21, 2000, Ragan filed a petition for writ of habeas corpus in the United States District Court for the Eastern District of Pennsylvania. Following habeas counsel's discovery of previously unknown evidence, Ragan filed a successive PCRA petition on October 15, 2001. The District Court stayed habeas proceedings pending resolution of Ragan's new state petition. Following a hearing, the PCRA trial court

---

[1] Different attorneys represented Ragan at trial, in his post-verdict motions and at sentencing, on direct appeal, and in post-conviction proceedings.

3

denied Ragan's petition. The Pennsylvania Superior Court affirmed and the Pennsylvania Supreme Court declined review.

The District Court lifted the stay but found the habeas petition untimely. We reversed and reinstated the petition. Ragan v. Horn, 411 F. App'x 491 (3d Cir. 2011). Ragan filed an amended habeas petition and on March 29, 2016, the District Court adopted in part the magistrate judge's report and recommendation that the petition be denied with prejudice, granting a certificate of appealability as to the issues presented here. Ragan timely appealed.

## II.[2]

## A.

Ragan first argues that his trial counsel was constitutionally deficient for failing to object to the introduction of an out-of-court statement containing a purported admission of guilt by Ragan.

Guilford testified at the preliminary hearing and at trial that he did not see who shot Thomas. This contradicted earlier statements given to the police. In one of these statements, made fifteen days after the shooting, Guilford recounted a visit from Victor Ragan ("Victor"), Ragan's brother, at which Victor relayed that Ragan had admitted to shooting Thomas. Counsel did not object to the statement's introduction at trial.

---

[2] The District Court had jurisdiction under 28 U.S.C. §§ 2241 and 2254. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253. Our review of the District Court's denial of Ragan's habeas petition is plenary, Ross v. Dist. Att'y Allegheny Cnty., 672 F.3d 198, 205 (3d Cir. 2012), and we apply the same standard that governed the District Court, Dennis v. Sec'y, Pa. Dep't of Corrs., 834 F.3d 263, 280 (3d Cir. 2016) (en banc).

4

In his PCRA petition, Ragan claimed that Guilford's statements constituted inadmissible double hearsay and his attorney's failure to object amounted to ineffective assistance of counsel. The trial court denied the claim. On appeal, the Pennsylvania Superior Court held that Guilford's prior statements were not introduced for their truth but to explain Guilford's recantation, and that they were therefore not hearsay and were properly admitted. Accordingly, that court denied Ragan's ineffective-assistance claim and affirmed.

Ragan renews his challenge here. To prove a constitutional violation Ragan must establish that his counsel's performance was deficient and that he was prejudiced by it. Strickland v. Washington, 466 U.S. 668, 687 (1984). An ineffective-assistance claim fails that first prong if the attorney did not make a mistake at all, for example (as the state court found), if he did not to object to evidence that was in fact admissible.

Ragan argues that the state court's conclusion that Guilford's statements were not hearsay was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); Premo v. Moore, 562 U.S. 115, 120-21 (2011) (articulating the standard under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA") for reviewing an issue which a state court decided on the merits). To prevail, he must marshal "clear and convincing evidence" to overcome the presumption that the state court's factual findings are correct. 28 U.S.C. § 2254(e)(1); Dennis v. Sec'y, Pa. Dep't of Corrs., 834 F.3d 263, 281 (3d Cir. 2016) (en banc). AEDPA's standard is "difficult to

5

meet" and "highly deferential" and requires "that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citations omitted).

Under Pennsylvania law, "[h]earsay is an out-of-court statement offered to prove the truth of the matter asserted." Commonwealth v. Puksar, 740 A.2d 219, 225 (Pa. 1999). A statement offered for other reasons "is not hearsay and is not excludable under the hearsay rule." Id. The government contends that it introduced Guilford's police statement about Victor's visit to demonstrate that Guilford recanted his prior statements because he was intimidated by Victor.

Ragan argues that his purported admission, relayed to Guilford by Victor, was introduced for its substantive truth.[3] There is no evidence, however, that this was the government's aim. The prosecution never mentioned Victor's statements again. To the contrary, the government consistently reiterated, to the court and the jury, its witness-intimidation theory. Given these repeated arguments and other evidence supporting the government's theory, we cannot say that the state court's decision that the statements were not hearsay rested on an unreasonable determination of the facts.[4] Cf., e.g., Commonwealth v. Johnson, 838 A.2d 663, 680 (Pa. 2003) (holding that attempts to

---

[3] In support of his argument, Ragan points to the trial court's jury instructions that they may consider a witness's inconsistent out-of-court statements for their substantive truth. But Ragan offers no support for the proposition that the court's instructions, ex post, alter for what purpose Guilford's statements were offered. In any event, the inconsistent-statement rule applies only to testifying witnesses, which Victor (and Ragan) were not.

[4] The parties dispute whether determining whether a statement is hearsay is a question of law or fact. Because Ragan's claim fails even under the less deferential standard for reviewing a state court's factual determination, we need not resolve the dispute.

6

interfere with witness testimony are generally admissible as non-hearsay);

Commonwealth v. Brown, 648 A.2d 1177, 1182 (Pa. 1994) (holding that an out-of-court

statement offered only for the fact that it was made was not inadmissible hearsay).

Accordingly, Ragan's ineffective-assistance claim fails. See United States v. Sanders,

165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of

effective counsel based on an attorney's failure to raise a meritless argument.").

### B.

Ragan also argues that his counsel was ineffective for failing to introduce the

police statements of Martino Crews ("Crews"), an eyewitness to the shooting. Hours

after the murder, Crews told police that while standing on the street corner he saw

somebody emerge from the passenger side of Ragan's car and begin shooting at Thomas.

Fifteen days later, Crews gave a second statement, asserting that in fact no one got out of

the car and that he thought that the shooter resembled Ragan. No evidence of Crews'

statements was presented at trial.

Neither Ragan's direct appeal nor his first PCRA petition raised the issue. Crews'

statements were not discovered by current counsel until 2001, at which point Ragan

moved to stay federal habeas proceedings and filed a successive PCRA petition. Ragan

argued that the prosecution withheld Crews' statements in violation of Brady v.

Maryland, 373 U.S. 83 (1963), or alternatively that if his counsel had known about the

statements then counsel was ineffective for not presenting them at trial. The state court

denied Ragan's Brady claim, finding that the statements were disclosed to trial counsel,

and rejected the ineffective-assistance claim as untimely.

7

Ragan admits that the ineffective-assistance claim was untimely and therefore defaulted. Nonetheless, Ragan contends that his initial PCRA counsel's failure to raise the claim excused the default and warrants our fresh review of trial counsel's failure to introduce Crews' statements. We disagree.

When deciding a habeas petition we cannot review the merits of a claim "that a state court declined to hear because the [petitioner] failed to abide by a state procedural rule." Martinez v. Ryan, 566 U.S. 1, 9 (2012). This rule is excepted where the petitioner can demonstrate that there was cause for, and prejudice resulting from, the default. Coleman v. Thompson, 501 U.S. 722, 750 (1991). The parties dispute whether Ragan can overcome his admitted procedural default; we need not settle that question, however, because even assuming he can, his ineffective-assistance claim fails on the merits. Roman v. DiGuglielmo, 675 F.3d 204, 209 (3d Cir. 2012) ("Because we will deny [the] claims on the merits, we need not address the issue of exhaustion.").

A successful ineffective-assistance claim entails demonstrating that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. This means that Ragan must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The "mere possibility" that the outcome would have been different is not sufficient to establish Strickland prejudice. Rountree v. Balicki, 640 F.3d 530, 538 (3d Cir. 2011).

8

From Crews' statements, the jury would have heard that someone exited from the passenger side of Ragan's car, walked up to the driver's side of Thomas' car, and "started shooting."[5] App. 1114. We do not discount the exculpatory value of this evidence. But such value would have been significantly blunted by Crews' later recantation. Given the evidence in support of Ragan's conviction — including forensics evidence, evidence of motive, and Guilford's multiple identifications — there is not a "reasonable probability" that the introduction of Crews' statements would have resulted in a different trial outcome. Accordingly, Ragan's claim fails.

## C.

Ragan finally contends that the prosecutor's questioning of Ms. Guilford constituted misconduct amounting to a violation of due process.

In a prior statement, Ms. Guilford relayed to the police that Guilford had told her that Ragan was the shooter. At trial, Ms. Guilford asserted otherwise. The prosecutor then asked whether Ms. Guilford knew Ragan, Ragan's uncle ("Walton"), and Victor, and whether her "knowledge of" the individuals caused her to alter her testimony, which Ms. Guilford denied. App. 474-77. Similarly, after questioning her knowledge of the relationship between her nephew and Ragan's cousin, the prosecutor asked Ms. Guilford about whether "anything arising out of [her] association . . . with members of the Ragan family" caused her to "fabricate [her] testimony." App. 478-79. Again, Ms. Guilford

---

[5] Ragan contends that counsel was deficient in part because of his failure to investigate Crews' knowledge of the events. But Crews' eyewitness account is contained in his contradictory statements, which would have limited the impact of any additional testimony he offered at trial.

said no. Throughout the questioning, the prosecutor displayed police mugshots of Walton, Victor, and Ms. Guilford's nephew.

Counsel objected and at sidebar moved for a mistrial. The prosecution argued that the questioning was relevant to explain Ms. Guilford's recantation. Ragan countered that Ms. Guilford's relationships with the individuals was irrelevant and that the evidence's sole purpose was to "draw the inference that there is something wrong going on because some of these people have prison records." App. 482. Although the court expressed concern with the questioning's prejudicial nature, it denied the mistrial motion and instead gave a limiting jury instruction.[6] On direct appeal, Ragan argued that a new trial was warranted because of prosecutorial misconduct.[7] The state court denied Ragan's challenge, a conclusion which Ragan now contends was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2).

We disagree. Mindful of the appropriate standard of review, we must determine whether the prosecution's conduct "so infect[ed] the trial with unfairness as to make the resulting conviction a denial of due process." Greer v. Miller, 483 U.S. 756, 765 (1987) (citation omitted); Ramseur v. Beyer, 983 F.2d 1215, 1239 (3d Cir. 1992). We consider, "in light of the entire proceeding," "the prosecutor's improper actions, the weight of

---

[6] The court instructed the jury to "disregard and don't draw any inferences from those questions concerning [Ragan's family and friends] and/or the showing of any photographs with regard to those individuals." App. 573.

[7] The government argues that Ragan failed to exhaust state remedies because on appeal Ragan raised a prosecutorial misconduct claim and not a federal due process claim. We need not settle the issue because, even assuming exhaustion, Ragan's claim is meritless.

properly admitted evidence and any curative instructions given by the trial court." United States v. Morena, 547 F.3d 191, 194 (3d Cir. 2008) (citations omitted). Misconduct does not deprive the defendant of a fair trial "[w]hen the evidence [against the defendant] is strong, and the curative instructions adequate." Id. at 196 (citation omitted).

We share the trial court's concerns about the unduly prejudicial nature of the questioning, which the government at trial admitted failed to establish that Ms. Guilford was intimidated by Ragan or his relatives. But after sidebar, the government did not mention Ragan's relatives again.[8] And the court instructed the jury to disregard the questioning altogether, an instruction which we presume the jury followed, Commonwealth v. Baker, 614 A.2d 663, 672 (Pa. 1992). Given these instructions, and considering the significant evidence supporting Ragan's conviction, we must defer to the state court's finding that the prosecutor's conduct did not warrant a new trial. Cf., e.g., Morena, 547 F.3d at 197 (holding that a jury instruction was inadequate to cure misconduct where the court merely reminded the jury about evidence's irrelevance instead of instructing the jury to disregard it).

III.

---

[8] Ragan points to comments made in the government's closing argument in contending that the questioning and photographs "infected" the trial. The government maintains that any argument pertaining to the closing arguments is defaulted. Again, we need not resolve the procedural dispute because we do not believe that the prosecutor's remarks — which advanced the theory that Guilford and Ms. Guilford changed their testimony because they were afraid of Ragan but did not mention any of the individuals about which Ms. Guilford was questioned — amounted to misconduct, let alone a denial of due process.

11

For the foregoing reasons, we will affirm the District Court's denial of Moore's petition for a writ of habeas corpus.