**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-4247
_____

UNITED STATES OF AMERICA

v.

ASSANE FAYE
                    Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3-15-cr-00151-001)
District Judge: Honorable Peter G. Sheridan
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
December 11, 2017
_____

Before: RESTREPO, GREENBERG and FISHER, *Circuit Judges.*

(Filed: April 3, 2018)
_____

OPINION*
_____

RESTREPO, *Circuit Judge*.

---

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Following a jury trial, Assane Faye was convicted of embezzlement and mail fraud. On appeal, he raises a number of challenges to his conviction. For the reasons set forth below, we will affirm in part, vacate in part and remand for further proceedings.

**I**

As we write solely for the benefit of the parties, we set out only the facts necessary for the discussion that follows. In 2009, Faye founded United Security and Police Officers of America (the "Union") from which he embezzled more than $300,000 over a three-year period from March 2010 through August 2013. The embezzlement scheme took two forms: (1) Faye's hiring of his former girlfriend, Khady Gueye, who received a salary and expenses but performed no work for the Union and (2) Faye's repayment of fraudulent expense vouchers that he submitted to the Union. Faye also fraudulently obtained $7,364 in unemployment benefits from the New Jersey Department of Labor while employed by the Union.

Faye's personal relationship with Gueye ended in 1996, but in 2010 Faye hired Gueye as a consultant on the Union payroll, unbeknownst to Gueye. The consulting agreement called for Gueye to organize "unorganized security officers" at various sites throughout the state of New York and for her to report directly to Faye. App. 346. Although Gueye's purported signature appears on the document, she did not in fact sign it or agree to provide any services to the Union. Despite her lack of experience in union organizing and limited English language skills, Faye told the Union's executive board that Gueye was "highly recommended with extended experience in political and

2

community organizing." App. 162. Faye did not tell the board of his prior personal relationship with Gueye.

Over the course of her "employment" by the Union, Gueye received $244,169 in salary and reimbursements. During much of this time, Gueye was actually in Senegal, where she resided for approximately six months of every year. Faye was in fact the beneficiary of these funds; he systematically withdrew from the account in which Gueye's salary was deposited. More than 90 percent of the deposited money was withdrawn from ATMs in Toms River, New Jersey, near Faye's home, while Gueye lived 90 miles away in New York City. The majority of the withdrawals occurred when Gueye was not in the United States.

The second part of Faye's embezzlement involved fraudulent expense vouchers. Faye had his own checkbook for the Union account, and he regularly disbursed funds under his own signature for what were supposed to be union-related business expenses. The majority of Faye's fraudulent reimbursements involved mileage expense claims for his business-related travel. Faye submitted all expenses as if he had used a personal vehicle, for which he was entitled to mileage, when in fact he regularly used a rental vehicle, for which he was not. This resulted in a larger reimbursement than if he had submitted car rental and gasoline expenditures. Moreover, Faye repeatedly fabricated the actual mileage he reported on his vouchers, totaling $94,000 over a three-year period. Supp. App. 17-18. The Government presented a random sample of Faye's submitted vouchers that it had analyzed with Google maps to show that the miles Faye claimed on his vouchers were significantly higher than the expected mileage. Records from

3

Enterprise Car Rental supported this finding: mileage Faye claimed on his vouchers was almost triple the mileage actually recorded on the vehicles he had rented. Faye also repeatedly billed the Union for domestic travel expenses during times when official customs records showed that he was actually outside of the country.

Lastly, Faye applied for and received unemployment benefits from New Jersey from March 21, 2010 through June 27, 2010. During that time, although not yet receiving a salary, he was working as president of the Union and writing checks for business reimbursements to himself from the Union's bank account. Faye also travelled to France in May 2010, which likewise rendered him ineligible to receive unemployment benefits during that time since he was neither looking nor available for work while travelling abroad. During the three relevant months, Faye improperly received a total of $7,364 from the New Jersey Department of Labor.

Faye was charged with nine criminal counts. Count One was embezzlement from the Union through improper salary and disbursements to Gueye; Count Two was embezzlement from the Union through false reimbursement vouchers; and Counts Three through Nine were mail fraud resulting from false representations to the State of New Jersey in Faye's application for unemployment benefits. A jury convicted Faye on all nine counts. He was sentenced to a total of 37 months' imprisonment followed by a period of supervised release. App. 3. The District Court also ordered Faye to pay $244,169.78 in restitution on Count One, $74,000 on Count Two, and $7,364 for Counts Three to Nine. Faye timely appealed.

On appeal, Faye advances four arguments. First, he contends that there was insufficient evidence to support the jury's guilty verdict on Count Two. Second, he contends that there was also insufficient evidence to support the jury's guilty verdict on Counts Three through Five and Seven through Nine. Third, Faye contests the restitution order on several grounds. Finally, Faye asserts that the prosecutor's comment during rebuttal summation lessened the Government's burden of proving the crimes charged beyond a reasonable doubt, amounting to prosecutorial misconduct. We will address each in turn.

**A. Sufficiency of the Evidence (Count Two)**

When reviewing a challenge to the sufficiency of evidence, we exercise plenary review and uphold the conviction "if any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *United States v. Gibbs*, 190 F.3d 188, 197 (3d Cir. 1999).

Count Two charged Faye with unlawful conversion of union property in violation of 29 U.S.C. § 501(c). Faye argues that the Government made its burden more stringent by adding an additional element in Faye's indictment and then failed to offer sufficient evidence to establish that element. Specifically, Faye argues that by charging him with improper reimbursements "in excess of $100,000" in the indictment, the Government added an amount to the offense which was not sustained by the evidence presented at

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231, and we have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

trial. We disagree. The statute provides neither a dollar threshold nor differing degrees of criminal culpability based on the value of funds unlawfully converted. That the District Court instructed the jury as to the amount alleged in the indictment does not change the fundamental elements of the offense or the Government's burden with respect thereto. Even assuming the jury instructions incorrectly referenced the amount, the Supreme Court in *Musacchio v. United States* made clear that sufficiency review is assessed against the actual elements of the offense, not against the elements contained in an erroneous jury instruction. 136 S. Ct. 709, 715 (2016). There was substantial evidence from which a rational jury could conclude that Faye's fraudulent expense vouchers satisfied the essential elements of 29 U.S.C. § 501(c).

**B. Sufficiency of the Evidence (Counts Three through Nine)**

Counts Three through Nine charged Faye with mail fraud for his receipt of unemployment benefits from the State of New Jersey in violation of 18 U.S.C. § 1341.[2] Faye contends that there was insufficient evidence to support a jury finding that his misrepresentations to the New Jersey Department of Labor were material to his receipt of unemployment benefits. This argument fails. An employee for the New Jersey Department of Labor testified at trial that an individual applying for unemployment benefits must be able, available and searching for work to be eligible for benefits. In his application, Faye falsely stated on seven separate occasions from March 27, 2010 through June 26, 2010 that he satisfied that criteria, when in fact he was working full-time to

---

[2] Faye does not challenge his conviction for mail fraud on Count Six as he admits to being out of the country and unavailable for work during that period.

establish the Union, even if not taking a salary at the time. This evidence was sufficient for a rational jury to find Faye's statements material.

### C. Restitution

Faye raises three challenges to the District Court's restitution order. First, he argues that the District Court erred in ordering restitution for Counts One and Two under the Mandatory Victims' Restitution Act ("MVRA"), rather than as a condition of supervised release pursuant to 18 U.S.C. § 3583(d). Faye then argues that the District Court abused its discretion in the amount of the awards on Counts Two to Five and Seven to Nine. We review de novo whether an award of restitution is permitted under law, but we review specific awards for abuse of discretion. *United States v. Bryan*, 655 F.3d 232, 253 (3d Cir. 2011).

The parties agree, as do we, that the District Court erred in ordering restitution for Counts One and Two pursuant to the MVRA, which authorizes restitution for certain offenses under Title 18 and Title 21. Because Faye was convicted of an offense under Title 29, restitution ordered pursuant to the MVRA was improper. Rather, 8 U.S.C. § 3583(d) is the proper authority for restitution in this case. Taken together, § 3583(b) and § 3583(d), authorize the "federal courts to order restitution as a condition of supervised release for any criminal offense . . . for which probation is properly imposed." *United States v. Batson*, 608 F.3d 630, 636 (9th Cir. 2010). We will remand for resentencing to allow the District Court to consider whether to award restitution as a condition of supervised release on Counts One and Two.

7

Faye's other arguments concerning the specific amounts in the restitution order are without merit. District courts have wide discretion to make a reasonable estimate of loss when ordering restitution. *See United States v. Ali*, 508 F.3d 136, 145 (3d Cir. 2007). The District Court did not abuse its discretion in determining based on the evidence presented at trial that $74,000 was a reasonable estimate of the Union's loss for Count Two and $7,364 was a reasonable estimate of New Jersey's loss for Faye's fraudulently obtained unemployment benefits for Counts Three to Five and Seven to Nine.

### D. Alleged Prosecutorial Misconduct

Faye's final argument concerns the alleged misconduct arising from a comment by the prosecutor during rebuttal summation. In an attempt to discount the many assumptions underlying the defense's case, the prosecutor explained to the jury the concept of Occam's razor, a "principle of problem solving," which holds that the hypothesis with "fewest assumptions" is usually correct. App. 1698. Defense counsel objected on the grounds that the comment may have misled the jury by suggesting a lower standard of proof than beyond a reasonable doubt. App. 1711. In response, the District Court asked defense counsel to draft a curative instruction clarifying the standard of proof and when she was unable to do so, the court provided one without objection from either party. App. 1712-15. Faye now argues on appeal that the prosecutor's remark should have resulted in a mistrial. Since counsel did not object to the content of the curative instruction at trial, we review for plain error. *See United States v. Brennan*, 326 F.3d 176, 182 (3d Cir. 2003). To establish plain error, the defendant must prove that there

8

is "(1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights. *United States v. Hakim*, 344 F.3d 324, 328 (3d Cir. 2003).

"The test for prosecutorial misconduct is whether the conduct 'so infected the trial with unfairness as to make the resulting conviction a denial of due process' in light of the entire proceeding." *United States v. Morena*, 547 F.3d 191, 193–94 (3d Cir. 2008) (quotation omitted). In conducting this analysis, we consider, *inter alia*, the prosecutor's improper actions and any curative instructions. *Id*. We reject Faye's contention that the remark rose to the level of prosecutorial misconduct in light of the record as a whole. Any potential confusion caused by the comment was fully addressed by the District Court's curative instruction, which instructed that "the burden of proof beyond a reasonable doubt is controlling over any analogy to the reference to the fewest assumptions." App. 1716. The jury is presumed to follow the instructions given by the trial court. *Hakim*, 344 F.3d at 326. The District Court did not plainly err.

## III

For the foregoing reasons, we affirm Faye's convictions, vacate the restitution ordered pursuant to the MVRA and remand for resentencing so that the District Court can consider whether to award restitution as a condition of supervised release for Counts One and Two.